# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALONZO WILLIAMS,

        Plaintiff,

v.                                                                               Case No. 18-CV-1315

ANDREW M. SAUL[1],
Commissioner of Social Security,

        Defendant.

# DECISION AND ORDER

## PROCEDURAL HISTORY

Plaintiff Alonzo Williams alleges that he has been disabled since September 1, 2014 (Tr. 13) and is unable to work because of "pain in the legs, pain in the right arm, a back disorder, carpal tunnel syndrome, bilateral trigger thumbs, and depression" (Tr. 19 (internal citations omitted)). In February 2015 he applied for disability insurance benefits (Tr. 235-38) and supplemental security income benefits (Tr. 239-44). After his application was denied initially (Tr. 70-115) and upon reconsideration (Tr. 116-47), a hearing was held before an administrative law judge (ALJ) on July 27, 2017 (Tr. 35-66). On December 21,

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted as the named defendant in this action.

2017, the ALJ issued a written decision concluding Williams was not disabled. (Tr. 13-27.) The Appeals Council denied Williams's request for review on August 13, 2018. (Tr. 1-3.) This action followed. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 7), and this matter is now ready for resolution.

## ALJ'S DECISION

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. The ALJ found that Williams "has not engaged in substantial gainful activity since September 1, 2014, the alleged onset date[.]" (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Williams has the following severe impairments: "degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, bilateral thumb flexor tenosynovitis, and depression[.]" (Tr. 15.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 416.1526, 416.920(d), and 416.926) (called "The Listings"). If the impairment or

impairments meets or medically equals the criteria of a listing and also meets the twelve-month duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Williams "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 16.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), "which is [the claimant's] 'ability to do physical and mental work activities on a regular basis despite limitations from her impairments.'" *Ghiselli v. Colvin*, 837 F.3d 771, 774 (7th Cir. 2016) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p. In other words, the RFC determination is a "function by function" assessment of the claimant's maximum work capability. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Williams has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can never climb ladders, ropes or scaffolds; he is limited to occasional climbing of ramps and stairs, occasional balancing, occasional stooping, occasional crouching, occasional kneeling and occasional crawling; he can perform no more than frequent bilateral handling and fingering of objects; he must be able to use a handheld assistive device (a cane); he can have no exposure to unprotected heights or moving machinery; and he is limited to understanding, carrying out and remembering no more than simple instructions.

(Tr. 18.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1526, 416.965. Williams's past relevant work was as a fast food worker, fast food services manager, and bindery worker. (Tr. 25.) The ALJ concluded that Williams "is unable to perform any past relevant work[.]" (*Id.*)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. At this step the ALJ concluded that, "[c]onsidering [Williams's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [he] can perform[.]" (Tr. 26.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE), who testified that a hypothetical individual of Williams's age, education, work experience, and RFC could perform the requirements of occupations such an order clerk, office helper, and inspector. (*Id.*) After finding Williams could perform work in the national economy, the ALJ concluded that he was not disabled. (Tr. 27.)

## STANDARD OF REVIEW

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C.

§ 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d at 413).

## ANALYSIS

Williams argues that the ALJ erred (1) in giving little weight to the opinions of treating physicians William Gerard, D.O., and Nosheen Hasan, M.D.; (2) in evaluating his statements concerning the intensity, persistence, and limiting effects of his symptoms; and (3) by failing to address in the RFC assessment all of Williams's limitations, including his need for a walker and his need to move after sitting for an extended period of time. (ECF No. 13 at 7.)

### I.     Medical Opinion Evidence

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported

5

by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)). While "[a]n ALJ must offer good reasons for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and citation omitted), courts will uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010)).

**A. Primary Care Doctor–Dr. William Gerard**

Williams argues that the ALJ erred in giving "little weight" to his primary care doctor, Dr. William Gerard. (ECF No. 13 at 8-15.) In September 2015 Dr. Gerard opined that Williams would be able to perform full-time work on a sustained basis fifty percent of a typical workday; could continuously sit for one hour and continuously stand for thirty minutes at one time; could sit for at least six hours and stand/walk for less than two hours in an eight-hour workday; could frequently lift and carry less than ten pounds,

6

occasionally lift and carry ten pounds, occasionally lift and carry twenty pounds, and rarely lift and carry fifty pounds; could occasionally grasp, turn, and twist objects; could occasionally make fine manipulations with his fingers; would, on average, be absent from work (or miss at least a couple hours of work) two days per month; and requires an assistive device – a cane – to ambulate. (Tr. 447-51.)

The ALJ gave "significant weight" to part of Dr. Gerard's opinion, explaining:

> The undersigned gives significant weight to the limitations set forth by Dr. Gerard that [Williams] could sit for at least six hours in an eight-hour workday, he could lift and carry ten pounds on an occasional basis, and he required the use of a cane. These limitations about sitting, lifting and carrying find support in the medical evidence showing that the claimant had degenerative disc disease but he still displayed some good function upon examination, such as full strength, intact sensation, and no neurologic deficits. Moreover, the limitation about the use of a cane is supported by the statements of other medical providers.

(Tr. 23-242 (internal citations omitted).) However, the ALJ gave "little weight" to other parts of Dr. Gerard's opinion, explaining:

> [T]he undersigned gives little weight to Dr. Gerard's opinion that [Williams] would miss two days of work each month because it is not supported by the medical evidence. Furthermore, the undersigned gives little weight to the other limitations set forth by Dr. Gerard that are inconsistent with the residual functional capacity because they are unsupported by the medical evidence. For instance, Dr. Gerard's assessment that [Williams] could stand/walk for less than two hours in an eight-hour workday is too restrictive given the evidence as a whole. The limitations about sitting and standing at one time also appear to be too restrictive. It is notable that Dr. Gerard's own progress notes documented that [Williams] had a normal gait, normal joint ranges of motion, normal reflexes, and intact motor strength. Likewise, it is unclear from the questionnaire and the treatment records how Dr. Gerard concluded that [Williams] had a 50 percent limitation in his abilities to persist with tasks

7

and maintain work pace/efficiency with even simple work tasks. As to handling and fingering, the undersigned finds that occasional handling and fingering is too restrictive given that [Williams] benefited from surgery and he displayed fairly good function both before and after the procedures.

Dr. Gerard also filled out a form about mental limitations in September 2015. Dr. Gerard opined that the claimant could perform most of the designated functions without limitations, but he had a slight limitation in the ability to complete a normal workday/week without interruptions from symptoms that cause an unreasonable number and length of rest periods. The undersigned gives little weight to Dr. Gerard's opinion because [Williams's] depression mostly developed in 2016 after this opinion was offered.

(Tr. 24 (internal citations omitted).)

The ALJ gave "little weight" to Dr. Gerard's opinion that Williams could stand/walk for less than two hours in an eight-hour workday because it was too restrictive given Dr. Gerard's findings of "a normal gait, normal joint ranges of motion, normal reflexes, and intact motor strength." (*Id.*) However, as Williams argues, "it is unclear how any of these findings detracts from Williams' providers' opinions concerning time off task, absenteeism, or limited sitting ability." (ECF No. 13 at 10.)

The ALJ also stated that it was not clear "how Dr. Gerard concluded that [Williams] had a 50 percent limitation in his abilities to persist with tasks and maintain work pace/efficiency with even simple work tasks." (Tr. 24.) Williams argues that "the ALJ's musings as to how a doctor reached their conclusions are misplaced; such an inquiry is irrelevant." (ECF No. 13 at 12.) The Commissioner counters that "[w]hile Plaintiff argues the ALJ should not be concerned with how Dr. Gerard reached his

8

opinion, it is clear the ALJ's intent was to express the lack of support for Dr. Gerard's opinion." (ECF No. 17 at 8-9.) The court agrees. Because the fifty percent limitation does not have support in the record, this was a valid reason for discounting Dr. Gerard's opinion.

Finally, the ALJ's gave little weight to Dr. Gerard's opinion as to occasional handling and fingering because it was too restrictive "given that [Williams] benefited from surgery and he displayed fairly good function both before and after the procedures." (Tr. 24.) However, "[t]he key is not whether one has improved …, but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). *See also Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1030 (E.D. Wis. 2004) ("One can be stable and yet disabled."). Williams argues that, even though his carpal tunnel symptoms improved, as reflected in treatment notes from Dr. Hodgson in March 2016 his thumb was "catching and locking" and "[t]here has been increasing pain for him." (Tr. 538.) In September 2016, at a subsequent visit with Dr. Hodgson, Williams was diagnosed with bilateral thumb flexor tenosynovitis and decided "to move forward with surgical release for his tender left thumb and injection for the right." (Tr. 537.) In October 2016 Dr. Hodgson performed a left trigger thumb release, and Williams received a steroid injection. (Tr. 531.) Finally, at his hearing in July 2017 Williams testified that his hands "cramp up" and "[he] can't hold heavy stuff in them…." (Tr. 48.) Therefore, even though there may have been some

9

improvements in his symptoms, the ALJ erred by relying on these improvements and discounting the difficulties he was still experiencing.

On remand, the ALJ shall reevaluate Dr. Gerard's opinions in light of the relevant evidence in the record. If the ALJ decides that Dr. Gerard's opinions are not entitled to controlling weight, he shall give "good reasons" supported by the record for discounting them.

**B. Pain Management Doctor–Dr. Nosheen Hasan**

Williams also argues the ALJ erred in giving "little weight" to the opinions of his pain management doctor, Dr. Nosheen Hasan. (ECF No. 13 at 8-15.) In November 2015 Dr. Hasan opined that Williams would be off-task five percent or less of a typical workday; would be able to perform full-time work on a sustained basis sixty percent of a typical workday; could continuously sit for thirty minutes and continuously stand for thirty minutes at one time; could sit and stand/walk for about two hours in an eight-hour workday; could frequently lift and carry less than ten pounds and never lift and carry twenty pounds or fifty pounds; could less than occasionally grasp, turn, and twist objects; could less than occasionally make fine manipulations with his fingers; would, on average, be absent from work (or miss at least a couple hours of work) more than four days per month; and requires an assistive device – a cane – to ambulate. (Tr. 492-96.)

Other than Dr. Hasan's opinion that Williams would need to use a cane, the ALJ gave "little weight" to Dr. Hasan's opinions, explaining:

> Among other things, Dr. Hasan's opinion suggested that the claimant was limited to part-time work and he could not even perform a sedentary position on a fulltime basis. This opinion is generally too restrictive given the overall medical evidence, which showed that the claimant displayed adequate function despite his physical impairments. Moreover, it is unclear from the questionnaire and the medical evidence how Dr. Hasan concluded that the claimant could only sit for about two hours in the workday. Dr. Hasan did not document clinical findings or objective medical evidence to support his assessments. Additionally, the opinions about handling, fingering and variable functioning of the upper extremities are too restrictive given the medical evidence.

(Tr. 24-25 (internal citations omitted).)

The ALJ could reasonably find that some of Dr. Hasan's opinions were "inconsistent with other substantial evidence." *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (quoting 20 C.F.R. § 404.1527(c)(2); citing *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell*, 627 F.3d at 306). For example, whereas Dr. Gerard opined that Williams would only miss about two days of work per month (Tr. 450), Dr. Hasan stated Williams would miss more than four days. (Tr. 495.) But beyond that, the ALJ only cites Williams's "adequate function" and "the medical evidence" as his justification for stating that Dr. Hasan's opinions are too restrictive and should, therefore, be given little weight. On remand, the ALJ shall reevaluate Dr. Hasan's opinions in light of the relevant evidence in the record. If the ALJ decides that Dr. Hasan's opinions are not entitled to controlling weight, he shall give "good reasons" supported by the record for discounting them.

## II. Symptom Evaluation

In making his RFC determination, the ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304 at *3; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities…." SSR 16-3p, 2017 WL 5180304 at *3. The ALJ's evaluation of a claimant's symptoms is entitled to "special deference" and will not be overturned unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d at 528 (citing *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)).

After considering the evidence in the record, the ALJ found that "the medical records documented [Williams's] degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, bilateral thumb flexor tenosynovitis, and depression." (Tr. 21.) However, "[a]s for [Williams's] statements about the intensity, persistence, and limiting effects of his symptoms, [the ALJ found that] they are not entirely consistent with the medical evidence." (Tr. 22.) The ALJ explained:

> The medical evidence showed that [Williams] had a significant back condition and he required the use of a cane throughout the period at issue.

> However, he exhibited adequate physical function at a number of examinations, including intact reflexes, full strength, intact sensation, and no neurologic deficits. Other progress notes stated that he had a normal gait and normal joint ranges of motion. Further, the treatment records stated that pain medications reduce his symptoms without any significant side effects.
>
> Although the claimant had carpal tunnel syndrome and thumb flexor tenosynovitis, the treatment records indicated that he did quite well after the surgeries. He displayed fairly good function even before surgery including normal grip strength, normal pinch strength, and normal fine and gross manipulative skills.
>
> While the claimant was diagnosed with depression, he still displayed cooperative behavior, normal memory function, and unimpaired insight and judgment. His depression was treated with an anti-depressant.

(*Id.* (internal citations omitted).) As such, the ALJ did not accept Williams's testimony that his impairments are work preclusive.

> Williams contends:
>
> [I]t is unclear how the ALJ's cited-to evidence of intact reflexes, full strength, intact sensation, and absence of neurological deficits builds an "accurate and logical bridge" to his conclusion that Williams' statements as to needing to lie down to relieve pain, poor sleep, upper extremity deficits, "bad days," and difficulty with prolonged positions and balancing should be disregarded.

(ECF No. 13 at 16). Williams then lists evidence from "deficits on exams that tend to detract from [the ALJ's] conclusion," (*Id.*) including:

- September 2014: on exam, mild-moderate spasm and tenderness[;]
- December 2014: symptoms sound "pretty classic" for lumbar radiculopathy; on exam, exhibits positive straight leg raise (SLR)[;]
- August 2015: on exam, had difficulty getting on and off the exam table, ambulates with difficulty, even with an assistive device, and gait is

13

- abnormal and markedly antalgic; spasm in the back noted and SLR testing positive bilaterally[;]
- October 2015: positive Durkan's compression and Phalen's test; positive shake awake sign; and positive Tinel's sign with stereotypical numbness and tingling bilaterally in the median distribution[;]
- August 2016: on exam, left lower lumbar tenderness, walks with a cane, limited range of motion; decreased sensation in the left foot[;]
- September 2016: on exam, limited range of motion, antalgic gait; abnormal heel and toe walk; lumbar tenderness[;]
- September 2016: on exam, catching of both thumbs and "exquisitely" tender[;]
- October 2016: walks with a cane, limited range of motion[;]
- November 2016: lumbar tenderness, limited range of motion, abnormal heel and toe walk, antalgic gait[;]
- March 2017: lumbar tenderness[;]
- June 2017: lumbar tenderness (left worse than right), walks with a cane, limited range of motion[.]

(*Id.* at 16-17 (internal citations omitted).)

Although an ALJ need not mention every piece of evidence, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), the Court of Appeals for the Seventh Circuit has held that "'[a]n ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability.'" *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (quoting *Campbell*, 627 F.3d at 301). Given the above-stated medical evidence that supports Williams's testimony, the ALJ erred by not discussing it.

Williams also argues, and the court agrees, that the ALJ erred by finding that "the treatment records stated that pain medications reduce his symptoms without any

significant side effects." (Tr. 22.) Williams provides ample evidence to the contrary, including:

- September 2014: Dr. Kornreich prescribes a Medrol Dosepak[;]
- December 2014: Williams relates that the Medrol Dosepak provides no relief[;]
- March 2015: Dr. Gerard prescribes Vicodin and Fexeril for back pain. However, a couple of weeks later, Williams presents to the emergency room with continuing leg pain and is prescribed Norco[;]
- In April 2015, because Williams continues to be symptomatic, Dr. Kornreich refers him to a pain clinic. The following month, Williams initiates pain management treatment with Dr. Hasan[;]
- Summer 2015: Williams engages in physical therapy but Dr. Hasan notes in July 2015 that Williams' pain is continuous[;]
- Treatment notes in late 2015 indicate continued back pain—worse with sitting and standing—use of a cane, and radiculopathy to the left worse than right leg despite medications such as MS Contin (Morphine) and Percocet[;]
- In October 2015, Williams undergoes a facet joint injection. However, Dr. Hasan remarks the following month that this injection did not help[;]
- In July 2016, Williams initiates pain management treatment with Ms. Zacharias (APNP). She notes low back pain that radiates to the left leg and foot and nine out of ten pain despite taking Lyrica and Cyclobenzaprine. Ms. Zacharias notes limited range of motion and antalgic gait and prescribes Morphine[;]
- In August 2016, Williams initiates treatment with a new primary care doctor, Dr. Moss. She notes Williams is upset because he feels no one is assisting him with his pain (she notes an upcoming appointment, however, with a pain doctor, Dr. Kropp)[;]
- September 2016: Dr. Kropp notes moderate-severe left lumbar pain, radiating to the left leg and exacerbated with sitting, bending, standing more than five minutes, and walking more than five minutes. Dr. Kropp continues Williams' Morphine and initiates Williams on Tizanidine; she also refers Williams to Dr. Bautista for a possible injection due to his lack of response from physical therapy[;]
- November 2016: Dr. Moss continues Williams on his current pain medications (Morphine, Lyrica, Tizanidine) and initiates Williams on Doxepin while again referring Williams to Dr. Bautista for possible injections[;]

15

- March 2017: Dr. Moss refers Williams for physical and occupational therapy as well as pain management[;]
- Early-mid 2017 physical therapy notes indicate continued left leg pain with the following functional limitations: sitting: thirty minutes, standing: fifteen to twenty minutes, walking: two to three blocks with a cane, falls due to left leg giving out, disturbed sleep due to pain, increased pain with lifting and carrying, and difficulty getting dressed and bathing.

(ECF No. 13 at 17-19 (internal citations omitted).)

On remand the ALJ shall reconsider whether Williams's medically determinable impairments could reasonably be expected to cause his alleged symptoms and, if so, the ALJ shall reevaluate the intensity, persistence, and limiting effects of those symptoms, taking into consideration Williams's daily activities; the location, duration, frequency, and intensity of his pain; factors that precipitate and aggravate his symptoms; the type, dosage, effectiveness, and side effects of his medication; any treatment, other than medication for relief of pain or other symptoms; any measures Williams uses to relieve pain or other symptoms; and any other factors concerning Williams's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304 at *7-8.

### III. Limitations Omitted in the RFC Assessment

Williams argues that the ALJ erred by not including in the RFC limitations that are supported by the record, including his need for a walker and the need to move around after prolonged sitting. (ECF No. 13 at 20-23.)

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

### A. Omission of His Need for a Walker

Williams argues that the ALJ erred by only including in the RFC assessment his need for a cane but omitting his need for a walker. (ECF No. 13 at 21-22.) Williams argues this is error "[b]ecause the VE testified that dependence on a wheeled walker would preclude the performance of competitive work." (*Id.* at 22 (citing Tr. 63-64).)

The ALJ explained:

> [T]he undersigned has considered the progress notes from Lora Sankey, PT, in March 2017 wherein she recommended that the claimant use a two-wheeled walker. The undersigned gives little weight to this statement because it is inconsistent with the assessments of several physicians who believed that the claimant should use a cane as opposed to a walker. Moreover, Ms. Sankey made this statement when the claimant was suffering from a flare-up of back pain after he helped someone move and his back locked up while throwing a chair into a dumpster.

(Tr. 25 (internal citations omitted).) Although it is true that the use of a wheeled walker was not consistent with assessments of some other physicians, those assessments were all from 2015 (Tr. 447-52, 492-96), and Ms. Sankey's recommendation for a wheeled walker was in 2017. (Tr. 655.) Therefore, her opinion was not necessarily "inconsistent" with the earlier-issued opinions, and that was not a valid reason for giving little weight to her opinion.

17

The ALJ did, however, articulate a valid reason for giving little weight to Ms. Sankey's opinion: that it was offered when Williams was suffering from a flare-up of back pain. Subsequent visits with Ms. Sankey in April 2017 make no mention of a recommendation for a walker. (Tr. 656-63.) And at a doctor's visit in June 2017 Williams was noted to be walking with a cane. (Tr. 914.)

Williams argues the ALJ misstated the evidence because the flare-up was not due to helping someone move (as the ALJ stated), an incident that occurred in 2014. (ECF No. 13 at 22.) The Commissioner acknowledges that the ALJ erred in stating the reason for the back pain flare-up, but argues that the cause of the pain flaring up is irrelevant. (ECF No. 17 at 10-11.) What matters is that the suggestion for a walker came on the heels of the pain flaring up. (*Id.* at 11.) The court agrees.

Because the ALJ articulated a valid reason for not incorporating the use of a wheeled-walker into his RFC assessment, the court finds no error.

**B. Omission of His Need to Move Around After Prolonged Sitting**

Williams also argues that the ALJ erred by omitting from the RFC assessment his need to move around after prolonged sitting. (ECF No. 13 at 22-23.) Williams argues that "[t]he ALJ does not provide any rationale for not including this limitation in his RFC assessment, which constitutes legal error and results in the RFC assessment not being supported by substantial evidence." (*Id.* at 22.) Williams further argues that "[s]uch omission calls into question whether the ALJ reasonably rejected this opinion or

overlooked this opinion altogether." (ECF No. 18 at 3.) The court agrees. Accordingly, on remand the ALJ should specifically include in his RFC assessment Williams's need to move around after prolonged sitting.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 23rd day of August, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge